Connie L. Chen (SBN 275649)
Connie.Chen@jacksonlewis.com
JACKSON LEWIS P.C.
725 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5408
Telephone: (213) 689-0404
Facsimile: (213) 689-0430

Attorneys for Defendant
WALDORF=ASTORIA MANAGEMENT LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

ANGELICA AMARO, an individual;
MICHELLE BAKER, an individual;
LAELA DUNCAN, an individual;
INGRID SARDARIAN, an individual;
AMY SINGH, an individual;
SYDNEY SURRELL, an individual;

        Plaintiffs,

   vs.

Waldorf=Astoria Management LLC
operating as The Waldorf Astoria Beverly
Hills; KEVIN B. Hair and Beauty, LLC;
and DOES 1-25,

        Defendants.

**CASE NO.:**

[Los Angeles County Superior Court Case
No. 23STCV29009]

**DEFENDANT'S NOTICE OF
REMOVAL OF ACTION TO
FEDERAL COURT PURSUANT TO 28
U.S.C. §§ 1332, 1441**

[Filed concurrently with Civil Case Cover
Sheet; Declarations of Connie Chen, James
Smith and Lea Nissen, Corporate
Disclosure Statement; Notice of Interested
Parties; Notice of Related Cases; and Proof
of Service]

Complaint Filed: November 27, 2023

///

///

///

///

1

**TO THE CLERK OF THE U.S. DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Defendant Waldorf=Astoria Management LLC ("Defendant") removes the above-entitled action to this Court from the Superior Court of the State of California, County of Los Angeles pursuant to 28 U.S.C. § 1441. Defendant invokes this Court's original jurisdiction under 28 U.S.C. § 1332(d) (the Class Action Fairness Act). Defendant submits this Notice of Removal without waiving any defenses to the claims asserted by Plaintiffs Angelica Amaro, Michelle Baker, Laela Duncan, Ingrid Sardarian, Amy Singh, and Sydney Surrell ("Plaintiffs") and without conceding that Plaintiffs have pled claims upon which relief can be granted. This removal is based on the following grounds:

## PROCEDURAL BACKGROUND.

1.     On November 27, 2023, Plaintiffs filed an unverified Class Action Complaint against Defendant in the Superior Court of the State of California for the County of Los Angeles entitled *ANGELICA AMARO, et al. v. WALDORF=ASTORIA MANAGEMENT LLC, et al.,* Case No. 23STCV29009, which sets forth the following 17 causes of action: (1) willful misclassification; (2) failure to pay all wages; (3) willful failure to pay all wages upon separation; (4) failure to authorize or permit rest breaks and meal periods; (5) failure to provide paid sick leave; (6) willful failure to provide accurate wage statements; (7) failure to provide workers' compensation benefits; (8) failure to maintain written commissions agreement; (9) unlawful retaliation; (10) failure to pay wages and fringe benefits; (11) failure to reimburse employment related expenses; (12) making or authorizing illegal deductions; (13) unlawful tip-sharing and confiscation of gratuities; (14) failure to produce payroll records upon request; (15) unfair business acts and practices; (16) unjust enrichment; and (17) civil penalties under the California Private Attorneys General Act ("PAGA") (the "Complaint"). A true and correct copy of the Summons, Complaint ("Compl."), Civil Case Cover Sheet and related case documents filed in the Los Angeles

Superior Court and served on Defendants is attached as **Exhibit A** to the Declaration of Connie L. Chen ("Chen Decl."), filed concurrently with this Notice of Removal. (Chen Decl., ¶ 3.)

2.      As stated in Paragraph 98 of the Complaint, Plaintiff seeks to represent a proposed Class of:

> [a]ll current and former hourly, non-exempt employees or misclassified independent contractors who worked for Defendants and were not fully compensated for their time worked over forty (40) hours per week at overtime rates during at least one week and/or did not receive premium pay to which they were entitled for any missed rest breaks and/or meal periods, and/or were not timely compensated for all time worked or while on-call under Defendants' control, and/or were not paid the prevailing minimum wage due to uncompensated work, and/or were not provided with itemized wage statements detailing the commissions earned per date and service, and/or did not receive, or timely receive, all wages owed at separation of their employment and/or threatened with or subjected to retaliation by Defendants during the period beginning four years and 178 days before the filing of the initial *Bolos* Complaint[1] and ending when notice to the Class is sent.

("Putative Class Members") (Compl. ¶ 98.)

3.      On December 6, 2023, Hon. Carolyn B. Kuhl of the Los Angeles County Superior Court issued an Initial Status Conference Order and Minute Order setting an Initial Status Conference for February 1, 2024, which Plaintiff served on Defendants. (Chen Decl., ¶ 4.)  True and correct copies of these orders are included in **Exhibit A** to the Chen Declaration. (*Id.*)

4.      On December 6, 2023, Plaintiffs served the Summons and Complaint on Defendant Waldorf=Astoria Management LLC. (*Id.* at ¶ 5.) A true and correct copy of the Proof of Service is attached as **Exhibit B** to the Chen Decl.  (*Id.*)

5.      To date, there is no proof of service on file with the Los Angeles County Superior Court as to Defendant Kevin B. Hair and Beauty, LLC. (*Id.* at ¶ 8.)

---

[1] Plaintiffs are referring to the action entitled *Laurie Bolos, on behalf of herself and all others similarly situated v. Grand Wailea A Waldorf Astoria Resort, et al.*, United States District Court, District Court of Hawai'i Case No. 1:23-cv-00104-JMS-KJM filed on February 23, 2023.

6.      On January 4, 2024, Defendant Waldorf=Astoria Management LLC filed an Answer to the Complaint in Los Angeles County Superior Court. A true and correct copy of Defendant's Answer is attached to Chen Declaration as **Exhibit C**. (*Id.* at ¶ 6.)

7.      As of the date of this filing, **Exhibits A-C** to the Chen Declaration constitute all of the pleadings that have been filed or served in this action, and no further proceedings have occurred in the state court. (*Id.* at ¶ 7.)

## REMOVAL IS TIMELY

8.      This Notice of Removal has been filed within thirty (30) days after service of the Summons and Complaint upon Defendant. (*Id.* at ¶ 3, Ex. A.)  Therefore, this removal has been timely filed pursuant to 28 U.S.C. § 1446(b). *Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 354 (1999) ("[T]he defendant's period for removal will be no less than 30 days from service, and in some categories, it will be more than 30 days from service, depending on when the complaint is received."); *see also* California Code of Civil Procedure § 415.30(b).

## VENUE

9.      This action was filed in the Superior Court in and for the County of Los Angeles.  Thus, pursuant to 28 U.S.C. § 1441(a), Defendants are removing this action to the United States District Court for the Central District of California as the district "embracing the place where [the] action is pending."

## REMOVAL IS PROPER BASED ON THE CLASS ACTION FAIRNESS ACT

10.      Removal of this action is proper under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332 *et seq.*  Section 4 of CAFA, 28 U.S.C. § 1332(d)(2), has been amended to read, in relevant part:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

4

11.     In addition, CAFA provides for jurisdiction in the district courts only where the proposed class involves 100 or more members, or where the primary defendants are not States, State officials, or other governmental entities.  28 U.S.C. § 1332(d)(5).

12.     As set forth below, this is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332(d), in that it is a civil action filed as a class action involving more than 100 members, the matter in controversy – based on the allegations in the Complaint – exceeds the sum of $5,000,000, exclusive of interest and costs, and at least one plaintiff is a citizen of a state different from Defendant.  *See* 28 U.S.C. §§ 1332(d) and 1453.  Furthermore, none of the Defendants are a State, State official, or other governmental entity.

**A.     The Putative Class Contains More Than 100 Members.**

13.     To qualify for original jurisdiction under CAFA the number of putative class members encompassed by the proposed class action must number at least 100 members in the aggregate. *See* 28 U.S.C. § 1332(d)(5)(b).

14.     Here, Plaintiffs allege "[t]he number of members in the Class is believed to exceed two hundred (200).  (Compl., ¶ 99.)  Defendant Waldorf=Astoria Management LLC's records identify at least approximately **786** Putative Class Members, as defined by Plaintiffs in the Complaint. (Declaration of Lea Nissen ("Nissen Decl."), ¶ 6; Compl., ¶ 98).  Accordingly, the numerosity requirement for jurisdiction under CAFA is satisfied.

**B.     None of the Named Defendants Are Government Entities.**

15.     Neither Defendant is a State, a State official, or any other governmental entity.

**C.     All Served Defendants Consent to Removal**

16.     To date, only Defendant Waldorf=Astoria Management LLC has been served in this action.  (Chen Decl., ¶¶ 3, 8.)  Thus, all served defendants consent to removal of this action to the United States District Court for the Central District of California.  28 U.S.C. 1446(b)(2)(A).

**D.      Minimal Diversity Is Satisfied Under CAFA.**

17.      The standard for establishing diversity of citizenship under CAFA is different than diversity jurisdiction under 28 U.S.C. § 1332(a)-(c).  CAFA's diversity requirement is satisfied when there is minimal diversity, *i.e.*, when at least one member of a class of plaintiffs is a citizen of a state different from any named defendant. 28 U.S.C. § 1332(d)(2)(A); *see also Benko v. Quality Loan Serv. Corp.,* 789 F.3d 1111, 1116 (9th Cir. 2015); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.,* 602 F.3d 1087, 1090-91 (9th Cir. 2010) (holding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)); *Bradford v. Bank of Am. Corp.*, No. CV 15-5201-GHK (JCx), 2015 U.S. Dist. LEXIS 120800, at *13 (C.D. Cal. Sep. 10, 2015) ("[defendant] needed only to establish that one plaintiff was a citizen of a different state from any one defendant at the time of removal.").

18.      Citizenship of the parties is determined by their citizenship status at the action's commencement.  *See Mann v. City of Tucson*, 782 F.2d 790 (9th Cir. 1986).

19.      For individuals, citizenship is determined by a person's domicile.  *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986).  "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

20.      Plaintiff ANGELICA AMARO alleges she was, at the time of filing, a resident of the State of Florida. (Compl. ¶ 15.)  Accordingly, for purposes of removal under CAFA, Plaintiff AMARO is a citizen of the State of Florida.

21.      Plaintiff MICHELLE BAKER alleges she was, at the time of filing, a resident of the State of Florida. (Compl. ¶ 16.)  Accordingly, for purposes of removal under CAFA, Plaintiff BAKER is a citizen of the State of Florida.

22.      Plaintiff LAELA DUNCAN alleges she was, at the time of filing, a resident of the State of California. (Compl. ¶ 17.)  Accordingly, for purposes of removal under

CAFA, Plaintiff DUNCAN is a citizen of the State of California.

23.    Plaintiff INGRID SARDARIAN alleges she was, at the time of filing, a resident of the State of California. (Compl. ¶ 13.)  Accordingly, for purposes of removal under CAFA, Plaintiff SARDARIAN is a citizen of the State of California.

24.    Plaintiff AMY SINGH alleges she was, at the time of filing, a resident of the State of California. (Compl. ¶ 18.)  Accordingly, for purposes of removal under CAFA, Plaintiff SINGH is a citizen of the State of California.

25.    Plaintiff SYDNEY SURRELL alleges she was, at the time of filing, a resident of the State of California. (Compl. ¶ 19.)  Accordingly, for purposes of removal under CAFA, Plaintiff SURRELL is a citizen of the State of California.

26.    For diversity purposes, a limited liability company is deemed to be a citizen of any state in which any member of the company is a citizen.  *See Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).

27.    For diversity purposes, a corporation is considered a citizen of any state by which it is incorporated and of the state where it has its principal place of business. (28 U.S.C. § 1332(c)(1)). With respect to ascertaining a corporation's principal place of business, the United States Supreme Court has adopted the "nerve center test."  *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81 (2010).  Under the nerve center test, a corporation's principal place of business is where a corporation's high-level officers direct, control and coordinate the corporation's activities.  *Id*.  A corporation can only have one "nerve center."  *Id.* at 93-94.  In evaluating where a corporation's "nerve center" is located, courts will look to the center of overall direction, control, and coordination of the company and will no longer weight corporate functions, assets, or revenues in each state.  *Id*.

28.    Defendant Waldorf=Astoria Management LLC is duly formed under the laws of the State of Delaware. (Declaration of James Smith ("Smith Decl."), ¶ 4.) At all relevant times, Defendant Waldorf=Astoria Management LLC's headquarters, and thus its principal place of business, has been in the Commonwealth of Virginia. (*Id.*)

DEFENDANT'S NOTICE OF REMOVAL OF
ACTION TO FEDERAL COURT PURSUANT
TO 28 U.S.C. §§ 1332, 1441(b)

Defendant Waldorf=Astoria Management LLC controls its operations from its McLean, Virginia, headquarters, located at 7930 Jones Branch Drive, McLean, Virginia, 22102. (*Id*.) Its main office and management functions are concentrated at its headquarters in McLean, Virginia, and its officers direct, control, and coordinate its activities from this office. Its members also meet at its headquarters in McLean, Virginia. (*Id*.)

29. Defendant Waldorf=Astoria Management LLC's sole member is Hilton Domestic Operating Company, Inc. (Smith Decl*., ¶ 5*.) At all relevant times, Hilton Domestic Operating Company Inc.'s headquarters, and thus its principal place of business, has been in the Commonwealth of Virginia. (*Id*.) Hilton Domestic Operating Company Inc. controls its operations from its McLean, Virginia, headquarters, located at 7930 Jones Branch Drive, McLean, Virginia, 22102. (*Id*.) Its main office and management functions are concentrated at its headquarters in McLean, Virginia, and its officers direct, control, and coordinate its activities from this office. (*Id*.)

30. Thus, Defendant Waldorf=Astoria Management LLC is a citizen of Delaware and Virginia and Plaintiffs, citizen of California and Florida, are diverse from Defendant Waldorf=Astoria Management, LLC.

**E.    The Amount In Controversy Exceeds $5,000,000 Based On A Plausible Reading Of The Allegations Of The Complaint.[2]**

31. Plaintiffs do not allege any particular amount in controversy. Where a plaintiff's state court complaint does not specify the particular amount of damages claimed, the United States Supreme Court has held "a defendant's notice of removal need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," and the statement need not contain evidentiary submissions. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553, 554 (2014).

---

[2] Defendant denies each and every allegation set forth by Plaintiffs in the Complaint and denies that Plaintiffs or Putative Class Members are entitled to any compensatory or statutory damages, injunctive relief, restitution, civil penalties, attorneys' fees, or any other relief. Defendants also deny that this action can proceed as a class or representative action. Notwithstanding the above, removal of this action is proper given that removal is based on the allegations asserted in the Complaint.

Even if an evidentiary showing were required, Defendants need only show by a preponderance of the evidence that the amount-in-controversy requirement has been satisfied. *Id.* at 553-54; *see also Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).

32.     Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. *See* 28 U.S.C. § 1332(d)(6). Congress intended federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Sen. Jud. Comm. Rep., S. REP. 109-14, at 42. Moreover, any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case … Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly ...").

33.     In determining whether the amount in controversy exceeds $5,000,000, the Court must presume Plaintiffs will prevail on each and every one of their claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp. 993, 1001 (C.D. Cal. 2002) (*citing Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (the amount in controversy analysis presumes that "plaintiff prevails on liability"); *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993) ("the amount in controversy is not measured by the low end of an open-ended claim")).  Moreover, the argument and facts set forth herein may appropriately be considered in determining whether the jurisdictional amount in controversy is satisfied.  *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 843 n.1 (9th Cir. 2002)

1    (*citing Willingham v. Morgan*, 395 U.S. 402, 407 n.3 (1969)).

2    34.    Notably, "[t]here is no obligation by defendant to support removal with

3    production of extensive business records to prove or disprove liability and/or damages with

4    respect to plaintiff or the putative class members at this premature (pre-certification) stage

5    of the litigation." *Muniz v. Pilot Travel Ctrs. LLC*, 2007 U.S. Dist. LEXIS 31515, at *15

6    (E.D. Cal. Apr. 30, 2007).    Rather, a defendant seeking removal must prove by a

7    preponderance of the evidence that the aggregate amount in controversy exceeds the

8    jurisdictional minimum. *Rodriguez v. AT&T Mobility Servs. Ltd. Liab. Co.*, 728 F.3d 975,

9    977 (9th Cir. 2013) ("the proper burden of proof imposed upon a defendant to establish the

10   amount in controversy is the preponderance of the evidence standard"); *see Lewis v.*

11   *Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is

12   simply an estimate of the total amount in dispute, not a prospective assessment of

13   defendant's liability."); *Arias v. Residence Inn*, 936 F.3d 920, 922, 925 (9th Cir. 2019) (the

14   removing defendant may rely on reasonable assumptions in estimating the amount in

15   controversy, which "need not be proven").

16   35.    In *Dart Cherokee Basin Operating Co., LLC v. Owens*, the United States

17   Supreme Court held that, whereas here, the complaint is silent as to whether the amount in

18   controversy meets CAFA's jurisdictional threshold of $5,000,000 "a defendant's notice of

19   removal need include only a *plausible* allegation that the amount in controversy exceeds

20   the jurisdictional threshold."    135 S. Ct. 547, 554 (2014) (emphasis added).    Following

21   *Dart*, the Ninth Circuit confirmed "a removing defendant's notice of removal need not

22   contain evidentiary submissions but only plausible allegations of the jurisdictional

23   elements," and further that "when a defendant's allegations of removal jurisdiction are

24   challenged, the defendant's showing on the amount in controversy may rely on reasonable

25   assumptions." *Salter v. Quality Carriers, Inc.*, 2020 U.S. App. LEXIS 28364, *6-7 (9th

26   Cir. Sept. 8, 2020) (citations and internal quotation marks omitted).    Further, "'[n]o

27   "antiremoval presumption attends cases invoking CAFA' because 'Congress enacted

28   [CAFA] to facilitate adjudication of certain class actions in federal court.'"    *Adams v. Toys*

*'R' US – Delaware, Inc.*, 2015 U.S. Dist. LEXIS 11338, at *5-6 (N.D. Cal. Jan. 29, 2015) *quoting Dart*, 135 S. Ct. at 554.  On the contrary, courts are required to interpret CAFA's provisions broadly in favor of removal. *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1183-84 (9th Cir. 2015).

36.    Moreover, if a plaintiff asserts statutory violations, the court must assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise. *See Muniz v. Pilot Travel Ctrs. LLC*, 2007 U.S. Dist. LEXIS 31515, at *12-13 (E.D. Cal. Apr. 30, 2007) ("As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations. Plaintiff is the 'master of [her] claim[s],' and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought.") (*citing Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)); *see also Arreola v. The Finish Line*, No. 14-CV-03339-LHK, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation—when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation.").

37.    The amount in controversy may include general and special compensatory damages and attorneys' fees that are recoverable by statute, such as the provisions of the California Labor Code at issue in this case. *Galt G/S v. JSS Scandinavia,* 142 F.3d 1150, 1155-1156 (9th Cir. 1998); *Goldberg v. C.P.C. International, Inc.*, 678 F.2d 1365, 1367 (9th Cir. 1982) (attorney's fees may be taken into account to determine jurisdictional amount); *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1168 (6th Cir. 1975) ("It is settled that the statutory penalty and a statutory attorney's fees can be considered in

determining whether the jurisdictional amount is met").

38.     A removing defendant is "not required to comb through its records to identify and calculate the exact frequency of violations." *Oda v. Gucci America, Inc.*, No. 2:14-cv-7468-SVW (JPRx), 2015 U.S. Dist. LEXIS 1672, at *12 (C.D. Cal. Jan. 7, 2015); *see Sanchez v. Russell Sigler, Inc.*, No. CV 15-01350-AB (PLAx), 2015 U.S. Dist. U.S. LEXIS 55667, at *5 (C.D. Cal. Apr. 28, 2015). ("[A] removing defendant is not obligated to research, state and prove the plaintiff's claims for damages.") (citation omitted). *See also LaCross v. Knight Transport. Inc.*, 775 F.3d 1200, 1203 (9th Cir. 2015) (rejecting plaintiff's argument for remand based on the contention that the class may not be able to prove all amounts claimed: "Plaintiffs are conflating the amount in controversy with the amount of damages ultimately recoverable"); *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (in alleging the amount in controversy, defendants "are not stipulating to damages suffered, but only estimating the damages in controversy"). The ultimate inquiry is what amount is put "in controversy" by Plaintiffs' Complaint, not what defendants will actually owe. *LaCross*, 775 F.3d at 1202 (explaining that courts are directed "to first look to the complaint in determining the amount in controversy") (citation omitted).

39.     Defendant denies that it engaged in any Labor Code violations. But, because a plaintiff's allegations are treated as true for purposes of determining the amount in controversy, Defendant is able to provide approximate damage calculations—based on a reasonable, theoretical percentage of violations—for purposes of demonstrating the claims at issue satisfy the minimum damages threshold required for original jurisdiction under CAFA. Courts routinely find that such theoretical projections are "reasonable" in the face of allegations like Plaintiffs' here. *See, e.g., Mendoza v. Savage Servs. Corp*., 2019 WL 1260629, at *2 (C.D. Cal. Mar. 19, 2019) (noting that courts "routinely apply a 20% violation rate . . . for meal and rest period premiums"); *Baker v. Propak Logistics, Inc.,* 2019 WL 4168998, at *5 (C.D. Cal. Sept. 3, 2019) (finding assumptions of a 40% meal break violation rate and 20% rest break violation rate reasonable because "an

allegation of 'pattern and practice' of violations . . . impl[ies] that violations occurred routinely and frequently, and not occasionally or sporadically"); *Bryant v. NCR Corp*., 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (finding assumption of a 60% violation rate reasonable where plaintiff alleged that defendant had a "policy and practice of meal and rest period violations"); *Torrez v. Freedom Mortg. Corp., 2017 WL 2713400*, at \*4 (C.D. Cal. June 22, 2017) (finding assumption of a 40% violation rate reasonable).

40.    Here, as detailed below, Defendant has both plausibly alleged and established by a preponderance of the evidence that the amount in controversy exceeds $5,000,000 and the Court has jurisdiction pursuant to CAFA.  Plaintiffs' claims place an aggregate amount in controversy exceeding $5,000,000 as follows:

a.    At the Waldorf Astoria Beverly Hills where Plaintiffs worked, Waldorf=Astoria Management LLC has employed at least approximately **786** non-exempt employees between May 19, 2019 and September 15, 2023 (the "WABH Employees"). (Nissen Decl., ¶ 6.) Approximately **313** of the WABH Employees separated their employment during the time period of May 19, 2020 to September 15, 2023. (*Id.* at ¶ 7.)

b.    The majority of the WABH Employees are full time employees who typically work eight hours per day, five days per week.  (*Id.* at ¶ 8.)

c.    The hourly rate of pay of the WABH Employees who have been employed by Defendant in the past year (December 2022 to December 2023) ranges from $15.00 per hour to approximately $51.20 per hour, with the current average hourly rate of pay being $24.71.  (*Id.* at ¶ 9.)

d.    Approximately **270,981** shifts were worked by the WABH Employees between May 19, 2019 and September 15, 2023. (*Id.* at ¶ 10.)

41.    **Minimum Wage.** Plaintiff's second cause of action alleges that Defendant failed to pay Plaintiffs and the Putative Class Members minimum wages. (Compl. ¶¶ 124–133). California Labor Code § 1194 provides that any employee who receives less than the legal minimum wage applicable to the employee is entitled to recover the

13

unpaid balance of the full amount of the minim wage. Cal. Lab. Code § 1194. Conservatively estimating that Plaintiffs will attempt to recover one (1) hour of unpaid non-overtime work applicable for every five (5) shifts worked, and conservatively assuming that the WABH Employees were earning only $15.50 per hour[3], this claim alone places in controversy at least **$840,041.10** ($15.50 x 1 hour x (.20 x 270,981 shifts))[4].

42.    **Overtime.**  Plaintiffs' second cause of action also alleges that Defendant failed to compensate Plaintiffs and the Putative Class Members for all overtime hours worked. (Compl. ¶¶ 76, 80-82, 124–133). Under Labor Code section 510, overtime work must be compensated at one and one-half times the regular rate of pay for an employee. Conservatively estimating that Plaintiffs will attempt to recover one (1) hour of overtime wages for every five shifts worked (roughly one hour per week) for themselves and the Putative Class Members, and conservatively assuming that the WABH Employees were earning only $15.50 per hour, this claim alone places in controversy at least **$1,260,061.65** ($15.50 x $1.5^5$ x 1 hour x (.20 x 270,981 shifts)).

43.    **Waiting Time Penalties.** Plaintiffs' third cause of action alleges that Defendant failed to pay Plaintiffs and the Putative Class Members who are no longer employed by Defendant all wages due upon termination as required by California Labor Code sections 201 and 202. (Compl. ¶¶ 134–141.) California Labor Code § 203 provides that if an employer willfully fails to pay any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefore is commenced, up to a maximum of thirty (30) days. Cal. Lab. Code § 203. Given the number of WABH

---

[3] California state minimum wage in 2023 was $15.50.

[4] This does not account for liquidated damages ("double damages") that Plaintiffs seek to recover pursuant to Labor Code section 1194.2.  (Compl., ¶ 132.)

[5] For convenience and ease of calculation, Defendant is assuming that the hourly overtime rate is 1.5 times $15.50. Defendant denies it failed to compensate Plaintiffs and the Putative Class Members for all overtime hours worked at 1.5 times the "regular rate of pay" pursuant to Labor Code Section 510.

DEFENDANT'S NOTICE OF REMOVAL OF
ACTION TO FEDERAL COURT PURSUANT
TO 28 U.S.C. §§ 1332, 1441(b)

Employees whose employment terminated during the time period of May 19, 2020 to September 15, 2023, and conservatively assuming that the WABH Employees were earning only $15.50 per hour, this claim places in controversy at least **$1,164,360.00** (8 hours/day x $15.50/hour x 30 days x 313).

44. **Meal Periods.**  Plaintiffs' fourth cause of action alleges that Defendant failed to provide Plaintiffs and the Putative Class Members with legally complaint meal periods. (Compl. ¶¶ 85, 142–47.) California Labor Code § 226.7 provides that employees are entitled to one additional hour of pay at the employee's regular rate of compensation for each workday that a legally complaint meal period was not timely provided. Cal. Lab. Code § 226.7. Conservatively estimating that Plaintiffs will attempt to show that Plaintiffs and the Putative Class Members were not provided one (1) compliant meal period for every five (5) shifts worked, and conservatively assuming that the WABH Employees were earning only $15.50 per hour, this claim places in controversy at least **$840,041.10** (1 x (.20 x 270,981) x $15.50)[6].

45. **Rest Breaks.** Plaintiffs' fourth cause of action also alleges that Defendant failed to provide Plaintiffs and the Putative Class Members with legally compliant rest breaks. (Compl. ¶¶ 85, 142–47.) Under Labor Code section 226.7, an employee is entitled to one hour of pay for each workday in which a compliant rest break is not provided. California Labor Code § 226.7 provides that employees are entitled to one additional hour of pay at the employee's regular rate of compensation for each workday that a rest break was not provided. Cal. Lab. Code § 226.7. Conservatively estimating that Plaintiffs will attempt to show that Plaintiffs and the Putative Class Members were not provided one (1) compliant rest period for every five (5) shifts worked, and conservatively assuming that the WABH Employees were earning only $15.50 per hour, this claim places in controversy at least **$840,041.10** (1 x (.20 x 270,981) x $15.50).

---

[6]  For convenience and ease of calculation, Defendant is assuming that meal and rest break premiums are paid at a rate of $15,50.  Defendant denies that it failed to properly pay meal and rest break premiums to Plaintiff and the Putative Class Members at the "regular rate of pay" pursuant to Labor Code section 226.7.

46.   **Wage Statement Penalties.**   Plaintiffs' sixth cause of action alleges that Defendant knowingly and intentionally failed to provide Plaintiffs and the Putative Class Members with accurate wage statements. (Compl. ¶¶ 78, 83, 165–73.) California Labor Code § 226 provides that employees may recover actual damages or $50 for the initial pay period in which a violation occurs, and $100 for subsequent pay periods, not to exceed $4,000. Cal. Lab. Code § 226. The WABH Employees have been paid on either a bi-weekly basis or semi-monthly basis throughout the period from May 19, 2019 to September 15, 2023. (Nissen Decl., ¶ 11.) Assuming that each of the approximately 786 WABH Employees received ten (10) noncompliant wage statements during the applicable timeframe, for a total of $950 per employee (one $50.00 penalty for the first violation plus nine $100 penalties for subsequent violations), for all 786 putative class members, this claim places in controversy at least **$746,700.00** ($950 x 786).

47.   Accordingly, the amount placed in controversy by Plaintiffs' Complaint ***conservatively*** exceeds **$5,691,244.95.**   This does not include the damages that are potentially recoverable from other claims that Plaintiffs are asserting on behalf of themselves and the Putative Class Members, including but not limited to: (1) willful misclassification (Compl. ¶¶ 106-123); (2) failure to provide paid sick leave (Compl. ¶¶ 148-164); (3) retaliation in violation of Labor Code §§ 96, 98.6, 98.7, 232.5(a), and 1102.5 (Compl. ¶¶ 187-199); (4) failure to indemnify and reimburse for employment related expenses in violation of Labor Code § 2802 (Compl. ¶¶ 205-213); (5) unlawful tip-sharing and confiscation of gratuities (Compl. ¶¶ 223-229); (6) unfair business practices in violation of Business & Professions Code §§ 17200, *et seq.* (Compl. ¶¶ 241-251).   This amount is also based on the amount in controversy from May 19, 2019 through September 15, 2023 only and could also be considerably greater if one were to assume a higher violation rate and a higher rate of pay earned by the Putative Class Members.

48.   Importantly, the above estimates of the amount in controversy reach the jurisdictional threshold without including the unspecified amount of attorneys' fees that

Plaintiffs seek. (Compl. ¶¶ 122, 133, 147, 161, 173, 185, 233, Prayer for Relief).   In determining whether a complaint meets the amount in controversy threshold for a removal under 28 U.S.C. § 1332, a court may also consider the value of claims for attorney's fees.  *See Goldberg v. CPC Int'l, Inc.*, 678 F.2d 1365, 1367 (9th Cir. 1982) (attorney's fees may be taken into account to determine jurisdictional amount); *see also Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998) (holding the amount in controversy may include attorney's fees recoverable by statute).  Attorneys' fee awards in California wage-hour class actions can easily total several hundred thousands of dollars or more. *See, e.g.*, *McGuigan v. City of San Diego*, 183 Cal. App. 4th 610, 638 (2010) (noting attorneys' fees paid in settlement of $1.6 million); *Pellegrino v. Robert Half Int'l, Inc.*, 182 Cal. App. 4th 278, 287, 296 (2010) (affirming $558,926.85 in attorneys' fees in exemption misclassification class case, but reversing as to multiplier); *Vasquez v. California*, 45 Cal. 4th 243, 249 (2008) (noting award of $435,000 in attorneys' fees for class claims involving failure to pay wages, liquidated damages, penalties and waiting time penalties). Moreover, the Ninth Circuit recently concluded "that the amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Chavez v. JPMorgan Chase & Co.,* 888 F.3d 413, 414-15 (9th Cir. 2018).

49.    "Courts in this circuit have held that, for purposes of calculating the amount in controversy in a wage-and-hour class action, removing defendants can reasonably assume that plaintiffs are entitled to attorney fees valued at approximately twenty-five percent of the projected damages." *Fong v. Regis Corp.*, No. C 13-04497 RS, 2014 U.S. Dist. LEXIS 275, at *23 (N.D. Cal. Jan. 2, 2014); *see also Herrera v. Carmax Auto Superstores Cal., LLC*, No. EDCV-14-776-MWF (VBKx), 2014 U.S. Dist. LEXIS 188729, at *12 (C.D. Cal. June 12, 2014) ("Substantial authority supports a 'benchmark' 25 percent attorneys' fees figure to be added to any claim for which attorneys' fees are

available."); *Hamilton v. Wal-Mart Stores, Inc.*, No. ED CV 17-01415-AB (KKx), 2017 U.S. Dist. LEXIS 162856, at *16 (C.D. Cal. Sep. 29, 2017) ("The Ninth Circuit has allowed an estimate fee award of 25% of a plaintiff's damages in calculating the amount in controversy under CAFA."); *Gutierrez v. Stericycle, Inc.*, No. LA CV15-08187 JAK (JEMx), 2017 U.S. Dist. LEXIS 20975, at *51 (C.D. Cal. Feb. 14, 2017) ("it is appropriate to include in the calculation of the amount in controversy a potential fee award of 25% of the value of certain of the substantive claims.").

50.    For the foregoing reasons, and without conceding or admitting to the underlying merit of Plaintiffs' claims, the amount in controversy easily surpasses the $5,000,000 jurisdictional threshold required under CAFA.

## NOTICE TO ALL PARTIES AND STATE COURT

51.    In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers will be served promptly on Plaintiffs' counsel and filed with the Clerk of the Los Angeles County Superior Court. Therefore, all procedural requirements under 28 U.S.C. § 1446 will be followed and satisfied.

## CONCLUSION

Based on the foregoing, Defendant hereby removes the above-captioned action from the Los Angeles County Superior Court to this Court based on CAFA requirements (28 U.S.C. §§ 1332(d), 1441, 1446 and 1453), and respectfully requests that this Court retain jurisdiction for all further proceedings.

Dated:  January 5, 2024          JACKSON LEWIS P.C.


By:   */s/ Connie L. Chen*
      Connie L. Chen

      Attorneys for Defendant
      WALDORF=ASTORIA MANAGEMENT
      LLC